SMITH v. READ, Collector.

(Circuit Court of Appeals, Third Circuit. November 20, 1901.)

No. 42.

CUSTOMS DUTIES—CLASSIFICATION—LACE CURTAINS.

　　Lace curtains, having cotton as the material of chief value, which were made on the Nottingham lace curtain machine, but which, in addition to having undergone the usual finishing process of bleaching, dressing, and starching, have been ornamented by a cord design sewed thereon by the use of a machine known as the "Cornelli Machine," which largely increases their market value, are dutiable, under paragraph 339 of the tariff act of 1897, as lace curtains not elsewhere provided for, and not under paragraph 340, covering curtains, "finished or unfinished," made on the Nottingham machine.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Howard T. Walden, for appellant.

Wm. M. Stewart, Jr., and James B. Holland, for appellee.

Before ACHESON and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. This matter comes before the court on an appeal from the circuit court for the Eastern district of Pennsylvania affirming a decision of the board of general appraisers, and relates to the duty assessed upon certain lace window curtains imported by the appellant, which were made either wholly of cotton, or having cotton as the material of chief value. The duty was assessed as upon cotton lace curtains, under the act of July 24, 1897 (paragraph 339), which is as follows:

　　"Laces, lace window curtains, * * *, all of the foregoing composed wholly or in chief value of flax, cotton or other vegetable fibre, and not elsewhere provided for in this act, * * * sixty per centum ad valorem."

It appears from the evidence produced before the board of general appraisers, and made a part of the record here, that the curtains were made in part on the Nottingham lace curtain machine, and therefore it is claimed by the importer that they should have been assessed for duty under paragraph 340 of the above-mentioned act, which provides as follows:

　　"Lace window curtains, pillow shams and bed sets finished or unfinished, made on the Nottingham lace curtain machine or on the Nottingham warp machine and composed of cotton or other vegetable fibre, when counting five points or spaces between the warp threads to the inch, one cent per square yard, when counting more than five points or spaces to the inch one-half of one cent per the square yard, in addition for each such point or space to the inch in excess of five, and in addition thereto, twenty per centum ad valorem, provided that none of the above named articles shall pay a less rate of duty than fifty per centum ad valorem."

The evidence shows that, after this imported curtain had passed through its process of manufacture on the Nottingham lace curtain machine, it was a completed article so far as that machine was

concerned, but known to the trade as an unfinished curtain, because, in order to make it marketable,—fit for use,—it was necessary that it should be bleached, dressed, and starched. Although these operations were conducted upon another machine, the curtains did not lose their identity. They were still designated as curtains made on the Nottingham lace curtain machine, but in a finished state. As the curtains came from the Nottingham lace curtain machine, they were unfinished,—that is to say, there was something more needed to fit them for general use; when they had been bleached, dressed, and starched, they were finished, and adapted to the retail trade. This is the distinction which we think was sought to be drawn in paragraph 339, which provides for the imposition of a duty on lace curtains, finished or unfinished, made on the Nottingham lace curtain machine. The curtains which were presented at the custom house, and which are the subject-matter of this suit, in addition to having undergone the finishing process above mentioned, had had, by the operations of a machine known as the "Cornelli Machine," a cord sewed upon them in a design more or less intricate. The object sought to be accomplished was, not to make the curtain a finished article, for that had been or was to be done by the bleaching, dressing, and starching, but to ornament it,—to make it a curtain different in appearance, and of largely increased value. In our opinion, the curtain, by the operation of the Cornelli machine, became so changed in character, appearance, and value as to be readily distinguishable from the curtain known as one made on the Nottingham lace curtain machine, and was no longer within the description of curtains provided for in paragraph 340, but came within the classification of paragraph 339.

The conclusion reached by the board of general appraisers meets with our approval, and the decree of the circuit court is affirmed.