The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* MARCEL KURTZ (No. 3587)[1]

---

[1] T. D. 46320.

United States Court of Customs and Patent Appeals, April 12, 1933

Charles D. Lawrence, Assistant Attorney General (William H. Futrell, special attorney, of counsel), for the United States.

Brown & Carter (Allan R. Brown and Fred J. Carter, of counsel) for appellee.

[Oral argument February 8, 1933, by Mr. Lawrence and Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain berets, made wholly of wool, at the port of New York. These were classified for duty at 45 cents per pound and 50 per centum ad valorem as knit outerwear under paragraph 1114 of the Tariff Act of 1922, which, so far as applicable, is as follows:

PAR. 1114. * * * Outerwear and other articles, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for, valued at not more than $1 per pound, 36 cents per pound and 40 per centum ad valorem; valued at more than $1 and not more than $2 per pound, 40 cents per pound and 45 per centum ad valorem; valued at more than $2 per pound, 45 cents per pound and 50 per centum ad valorem.

The appellee protested, claiming the merchandise to be dutiable as "clothing and articles of wearing apparel * * * not knit" under paragraph 1115 of said act, which is as follows:

PAR. 1115. Clothing and articles of wearing apparel of every description, not knit or crocheted, manufactured wholly or in part, composed wholly or in chief value of wool, valued at not more than $2 per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than $2 but not more than $4 per pound, 30 cents per pound and 45 per centum ad valorem; valued at more than $4 per pound, 45 cents per pound and 50 per centum ad valorem.

An alternative claim is made under paragraph 1119 of said act as woolen manufactures, not specially provided for.

The United States Customs Court sustained the protest under said paragraph 1115, and the Government has appealed.

The articles in question are, admittedly, made wholly of wool, and no question is raised that there was error in fixing the value per pound of the goods.

The process of producing the goods is quite fully shown by the record and is as follows: A section of material is knitted on a flat knitting machine, and, when it has arrived at the proper size, it is cut off by a workman. This piece is much the shape of a bag, open down one side, with the mouth of the bag somewhat smaller than the lower portions. This bag-shaped piece is then sewed together up the side, by hand or machine. A small tail or button is also sewed at the bottom of the bag.

The article, with others, is then placed in a large pot in which there is a solution containing the dye, if any is used, and in which pot the articles are subjected to a pounding by several hammers. The beret is then removed in a wet condition and is placed upon a "board," where it is dried for about two days, either by air or stove heat, and is shaped. When the beret is removed from the pot it has been reduced in size by about one-half, is much thicker, is less elastic, and the knitting is much less apparent.

The beret is then placed in contact with a brushing machine, and its surface is smoothed thereby. During this process some of the wool is extracted by the brushes. How much does not appear.

When thus finished the berets are of the ordinary form, of various sizes and colors. They have a felted appearance. On examining them closely, the knitted stitches can be observed, especially by means of transmitted light. They are elastic, to a limited degree.

The basic material of which these berets are made is a knit fabric. No other process has contributed to the making of such basic fabric. Nothing has been added to this knitted fabric, except, possibly, dye, which dye would not here materially alter the dutiable status of the articles. The main question is: Have the subsequent processes, which finally result in the imported articles, so operated as to change the article from one knitted to one not knitted? In this connection it will be borne in mind that the importer has the burden not only of showing the incorrectness of the collector's classification but of establishing the correctness of his own theory.

The Customs Court was of the opinion that the case is ruled by *United States* v. *Benson Mfg. Corp. et al.*, 18 C. C. P. A. (Customs) 391, T. D. 44640. In that case, certain wool fez caps were imported, and the issue was as to whether they were properly classifiable under said paragraph 1114 or said paragraph 1115. The imported articles in that case were heavy woolen caps, inelastic, and bearing no ocular evidence of a knitted origin. The full process of making them was not disclosed because of a desire to retain secret certain details thereof. This much was shown:

A loose, untwisted preparation yarn of sheep's wool is made; this preparation yarn is manipulated for the upbuilding of shape and size of the fez. This raw

material is then napped for the felting. The felting process goes on with the adding of 50 to 60 per centum of short, loose sheep's wool. The further processes are finishing and dyeing according to the character of this special fez brand.

It was also shown by the Government examiner that wool had been felted on both the outside and inside of a knitted woolen bag to make the article, which assumed its final shape by artificial shrinking.

This court affirmed the judgment of the court below, finding the articles to be not knitted, saying, in conclusion:

While it is true that the foundation or base of the article was a knitted fabric or article, the manufacturing processes and additional wool applied to it caused it to lose its characteristics as a knitted article and the final product was, we think, an article not knitted.

That case is quite clearly distinguishable from the case at bar. In the *Benson* case the knitted fabric was but the base upon which the caps were builded by the addition of other material. In the case at bar nothing enters into the finished articles but fabric which is knitted. Not only is this true, but it retains, in a modified degree, the original characteristics and appearance of such knitted fabric.

It is argued that the knit fabric which forms the basis of the imported articles constitutes but a minor percentage of the cost of the finished product, and that, therefore, the imported articles may not properly be classified as knit. This, it is said, is verified by the record. The only testimony on that point is that of the witness Kurtz, who stated:

Q. Now one thing more; do you know the percentage of cost of the knitting process as compared with the other processes the articles go through?

Mr. GEISLER. Either yes or no.

The WITNESS. About; I do not know exactly.

 *  *  *  *  *  *  *

Q. What is the source of your knowledge?—A. Because it varies; every manufacturer has had a little less or something more, about 10 per cent; it could be 9 or 10 or 11; for instance, if this sold for 40 francs, the basic cost of knitting should be about 10 per cent. I can only say about; it might be 11; it might be 9; in a smaller factory it might be 12 per cent.

It will be apparent, upon consideration of this testimony, that it has but little, if any, evidentiary value. It appears that it is based upon hearsay. It seems to be little more than an expression of opinion by the witness.

But, assuming that the opinion of the witness be accepted, that the maximum cost of knitting the fabric is 12 per centum of the entire selling value of the imported articles, this shows but one element of the cost of production and does not show what the other elements of cost, such as cost of material, dye, and other processing, respectively, were. Hence, no comparative basis may be arrived at from the testimony of this witness, if such comparison be deemed material.

The trial court based its judgment in large degree upon this statement of law:

The general principle of law is that an article can not be classified as being made by one process if other substantial processes are employed in its manufacture.

In support of this proposition the following authorities are cited and relied upon: *Horstmann, Von Hein & Co.* v. *United States*, T. D. 24496, G. A. 5354, 6 Treas. Dec. 506; *J. W. Smith* v. *United States*, T. D. 21942, G. A. 4641, 3 Treas. Dec. 77; *Altman & Co.* v. *United States*, 11 Ct. Cust. Appls. 102, T. D. 38749; *In re Smith*, 108 Fed. 800; *Smith* v. *Read*, 111 Fed. 795; *Mills & Gibbs* v. *United States*, G. A. 5291, T. D. 24263, 6 Treas. Dec. 190.

In the first place it must be noted that all of the authorities relied upon dealt with provisions of the statute other than those involved here. In the *Horstmann* case, *supra*, certain cotton velveteen trimmings, cut or stamped out of cotton velveteen fabric, but which thereafter had been further advanced by being ornamented or embellished by having a heavy silk cord sewed around the edges of the trimming and a lace design sewed to the back thereof and showing between the open spaces of the trimming, were held to be not dutiable as cotton trimmings, but that they had "become so changed in character, appearance and value" as to bring them within the purview of paragraph 339 of the Tariff Act of July 24, 1897, which provided, in general, for trimmings.

In the cited cases of *J. W. Smith* v. *United States*, *supra*, affirmed in *In re Smith* and in *Smith* v. *Read*, *supra*, the court had under consideration paragraph 340 of the Tariff Act of July 24, 1897. The particular articles involved were lace window curtains upon which cording in certain patterns was sewed, all of which gave an embroidery or appliqué effect. The question was whether the lace window curtains were "made on the Nottingham lace curtain machine." The Board of General Appraisers, speaking through Fischer, General Appraiser, said, in part:

It is undisputed that a portion of the curtain was made on the Nottingham machine, and it appears from the testimony that when it leaves this machine, the curtain is a completed article, except as to the bleaching or dressing, starching, and finishing. If it were imported in that condition, there would obviously be no room for question as to its being made on the Nottingham machine. But the curtain before us has been subjected to a further process of manufacture, which consists in running it through what is known as a cording machine (not a Nottingham machine), which sews the cord on to the curtain in the form before us. The addition of this cord increases the value of the curtain by from 59 to 83 per cent, thus forming from 37 to 45 per cent of the value of the curtain as imported.

\*        \*        \*        \*        \*        \*        \*

We do not mean to hold that where a curtain, after coming from a Nottingham machine, goes through an incidental process on another machine, as, for instance, ironing and finishing, such additional process would take it out of the category

of "made on the Nottingham machine"; but where, as in this case, the additional process is not merely incidental, but, on the contrary, forms an important part of the manufacture itself and operates to change the entire character of the curtain, adding a very large percentage to its value, being entirely superfluous to the curtain as a curtain, and being put on for the express purpose of changing its character and increasing its value, we think there can be no doubt that the article does not come within the phrase "made on the Nottingham lace curtain machine or the Nottingham warp machine" as used in paragraph 340..

Therefore, and properly so, we think, the board held the goods were not properly classifiable as made on the Notingham lace-curtain machine.

In *Altman & Co.* v. *United States, supra,* this court, in passing upon the dutiable status of certain netting window curtains, approved the doctrine that where the basic material of curtains was made on the Nottingham machine, but where the curtains were made in part, in that case constituting 25 per centum of the value, on another sort of machine, the curtains could not be classified as made on the Nottingham lace-curtain machine. This holding was under paragraph 265 of the Tariff Act of October 3, 1913.

We are unable to see in the cases cited a rule announced which makes it necessary, in the case at bar, to hold that because subsequent processes were applied to the articles here involved, after the first knitting process, this fact removes the articles from the classification made by the collector as knit articles.

As we said in *Benson* v. *United States, supra,* each case of this character must be decided upon its own facts. There is no hard and fast rule which we may follow in all cases. We are of the opinion that the importer has failed to sustain the burden of proof imposed upon him and that the imported articles upon the state of this record were properly classified by the collector under said paragraph 1114 as knit articles made of wool.

The judgment of the United States Customs Court is *reversed.*

GARRETT, JUDGE, dissents.